the $9 shall be deposited by the defendant, and I think that this should be construed to require the party that demands the jury to pay the fee. If in the first instance the defendant demands a trial by jury, and if he would be required under section 231 to pay $4.50 if he required a jury of 6, then, on demanding a jury of 12, he would have to pay $9. But when the plaintiff demanded a trial by jury, if, by reason of the defendant's standing on his constitutional rights, a common-law jury of 12 became necessary, then the amount to be deposited by plaintiff would be $9, instead of $4.50. I do not read these two sections of the Municipal Court act as providing that the plaintiff never can be required to pay more than $4.50 as a jury fee and that the defendant shall pay all or a portion of this fee, where the plaintiff demands a jury and the defendant insists on a common-law jury. The plaintiff chooses the jurisdiction for the litigation, and should bear the burdens when he is the moving party.

The defendant having demanded a jury of 12, and not having waived that right, the court had no power to try the case with a jury of 6, and there was a mistrial. Skinner v. Allison, supra. Therefore I think the judgment should be reversed, and a new trial ordered, with costs to abide the event.

---

FOX et al. v. BUFFALO, R. & P. RY. CO.

(Supreme Court, Trial Term, Wyoming County. May 7, 1910.)

RAILROADS (§ 72\*)—MAINTENANCE—PRIVATE CROSSINGS—CHANGE.

　　The right of way deed to the predecessor of defendant railroad company required it to erect and maintain a farm crossing for plaintiff as required by the fourty-fourth section of the general railroad act (Laws 1850, c. 140), and a cattle pass under its track for his use. The railroad divided plaintiff's farm; the farm buildings, etc., being on one side, and the larger part of the land, including the pasture and grain land and all of the running water, being on the other side. The railroad company originally built an underground crossing of timber suitable for wagons, cattle, etc., which had been used for 30 years, but threatened to close it and construct in its place an underground cattle pass of concrete, and a grade wagon crossing several hundred feet distant from the old crossing. Because of the grade at each approach, and of the necessity of descending on one side parallel with the railroad tracks in order to connect with the road, etc., the proposed grade crossing would not be as convenient as an underground wagon crossing. The conditions have not changed since the underground crossing was originally constructed. Held, that while the railroad company was not bound originally to construct and maintain an underground wagon crossing, and while under the deed and the statute it could locate the point of crossing, yet, after having established an underground wagon crossing and acquiesced in its maintenance for 30 years, it could not now abolish it and substitute a grade crossing without plaintiff's consent, unless it made proper compensation, or so changed its embankment as to permit an equally convenient grade crossing.

　　[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 72.\*]

Suit by Elmer E. Fox and another against the Buffalo, Rochester & Pittsburg Railway Company. Judgment directed for plaintiffs.

Elmer E. Charles, for plaintiffs.
James S. Havens, for defendant.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WHEELER, J.  This action is brought to restrain the defendant from filling up and discontinuing a farm crossing under the defendant's railroad constructed across the farm now owned by the plaintiffs.

The railroad in question was built about the year 1878, by the Rochester & State Line Railroad Company.  That company acquired its right of way across the farm in question by a deed from one Stillman and wife, which contained the following provision:

"The party of the second part is to erect and maintain (where necessary) fences along the two outward lines of said strip of land of the height and strength of a division fence as required by law, with openings or gates or bars therein, and a farm crossing for the use of the party of the first part as required by the fourty-fourth section of the general railroad act, and for the purposes therein mentioned.  The party of the second part is also to erect and maintain a cattle pass under their track for the use and benefit of the party of the (first) part, their heirs and assigns."

The defendant is the successor, through various foreclosures and reorganizations, of the grantee in that deed.  The plaintiffs, through mesne conveyances, became the owner of the farm in 1908, when they got their deed.  The farm consists of 115 acres, and is divided by the railroad so that 45 acres, on which are the farm buildings, are on the west side, and 70 acres on the east side, of the railroad.  At the time of the trial, the 70 acres on the east side consisted of about 15 acres of woodland, 5 acres of swamp, 25 acres of pasture, and 20 acres of land devoted to the raising of grains and other farm produce.  All the living water on the farm is from springs a short distance east of the railroad, and it is necessary for the cattle kept on the farm to cross this railroad to be watered, and in going to the barn from the pasture in summer.

The defendant's railroad is built on an embankment across the farm, varying in height at different points, owing to the hilly or undulating surface of the ground.  When the railroad was originally constructed, it built for the use of the owner and grantor of the right of way a crossing passing under the railroad embankment.  The crossing was so constructed that it was about 12 feet high in the clear, and of width sufficient for the passage of teams, wagons, cattle, and necessary farming implements and tools.  This undercrossing was of timber construction, and was conveniently located so far as the farm buildings and land on the opposite side of the railroad is concerned.  This crossing, having been constructed at the time the railroad was originally built, has been maintained in that shape until the present time.  Within recent years, the defendant, in common with other railroads, has been replacing its timber bridges and structures of this character with ones built of concrete.  It proposed to fill up and close the farm crossing now in dispute, and in its place to give the plaintiff a cattle pass under its tracks, for the use of live stock, and a crossing over its railroad tracks at grade near the south line of the farm, and several hundred feet distant from the undercrossing long used.  To that end, the defendant has already constructed a concrete cattle pass, and was about to close the original undercrossing, when the plaintiff began this action to restrain the closing of the original opening, and to that end obtained

an injunction against so doing, pending the trial and determination of this action.

The construction and use of a farm crossing at grade, as proposed, necessarily involves the hauling of loaded wagons up a considerable grade, and a quite sharp turn, and a descent parallel to the railroad tracks after the tracks have been crossed, in order to reach the accustomed road on the other side. It goes without argument that a crossing at grade at the point proposed, or at any other point, would be much less desirable in every way than an undercrossing such as has existed and been maintained since the first building of the road. The dangers incident to such a crossing, and the annoyance of opening and shutting gates, to say nothing of any difficulties incident to hauling loads up and down a grade, make the undercrossing in every way preferable.

The defendant, however, contends that it is under no legal obligation to maintain an undercrossing, and that it has the right to close the old undercrossing, make a solid embankment at that point, and substitute a crossing at grade at the point proposed, so long as it observes the covenant contained in the deed to its predecessor in title, whereby it agreed to construct and maintain a cattle pass "under its track for the use and benefit of the party of the first part, their heirs and assigns."

It cannot be denied that this covenant in the deed from Silliman and wife to the railroad company imposed no obligation to construct and maintain an undercrossing suitable for teams and loaded wagons. The undercrossing was, by the terms of the agreement, confined to a pass for cattle; and for other purposes the general provisions of the railroad law applied, which required the construction and maintenance of a suitable farm crossing. If the defendant had seen fit to construct such a crossing at grade in the first instance, undoubtedly the owner of the farm would have had no just ground for complaint; and, so long as such a crossing answered the reasonable purposes of the owner of the land on either side, no other crossing could have been required.

The railroad company, under the provisions of the covenant of the deed and the provisions of the statute, had the right to locate the point of crossing; but having once located and established the point and mode of crossing, and acquiesced in it for 30 years, it is contended the location of it cannot be changed without the consent of the owners of the dominent and servient estates.

This is undoubtedly the general rule of law applicable to cases where an outlet is required for land isolated from highways or other property. Palmer v. Palmer, 150 N. Y. 146, 147, 44 N. E. 966, 55 Am. St. Rep. 653; Onthank v. Lake Shore & M. S. R. R. Co., 71 N. Y. 194, 27 Am. Rep. 35; Wademan v. A. & S. R. R. Co., 51 N. Y. 568; Hines v. Hamburger, 14 App. Div. 577, 43 N. Y. Supp. 977. In the case of Palmer v. Palmer, 150 N. Y. 146, 147, 44 N. E. 966, 967 (55 Am. St. Rep. 653), the court said:

"Where a person conveys to another a piece of land surrounded by lands of the grantor, the grantee and those claiming under him have a right of way by necessity through the lands of the grantor as an incident of the grant. This principle applies where the land conveyed is surrounded in part by

lands of the grantor and in part by the lands of a third person. The grantor in such a case has the right to designate the track or way, having due regard to the rights of both parties; but, if he declines or omits to exercise that right, the grantee may select for himself, and will be supported in his selection unless chargeable with palpable abuse. A right of way of necessity over the lands of a grantor, in favor of a grantee and those subsequently claiming under him, is not, however, a perpetual right of way, but continues only so long as the necessity exists. * * * Thus she selected the old way,' which must be regarded as established and consented to by the parties, as no objection seems to have been made for years after the selection or during the continuance of its use. That the plaintiff still possesses the right to use that way cannot be successfully disputed unless the necessity for it has ceased, and, consequently, the plaintiff's right has become extinguished."

In the case of Onthank v. Lake Shore & Michigan Southern R. Co., 71 N. Y. 197 (27 Am. Rep. 35), the court quoted with approval from the opinion of Bigelow, J., in the case of Jennison v. Walker, 11 Gray (Mass.) 423, as follows:

"Where an easement in land is granted in general terms, without giving definite location and description to it, so that the part of the land over which right is to be exercised cannot be definitely ascertained, the grantee does not thereby acquire the use of the servient estate without limitation as to the place or mode in which the easement is to be enjoyed. When the right granted has once been exercised in a fixed and definite course, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee. * * * This rule rests on the principle that where the terms of a grant are general or indefinite, so that its construction is uncertain and ambiguous, the acts of the parties, contemporaneous with the grant, giving a practical construction to it, shall be deemed to be a just exposition of the intent of the parties."

The court, in the Onthank Case, also cited with approval the decision in Bannon v. Angier, 2 Allen (Mass.) 128, where it is said:

"Where a right of way or other easement is granted by deed without fixed or definite limits, the practical location and use of such way or easement by the grantee under his deed acquiesced in by the grantor, at the time of the grant, and for a long time subsequent thereto, operate as an assignment of the right, and are deemed to be that which was intended to be conveyed by the deed, and are the same in legal effect as if it had been fully described by the terms of the grant. If it is afterward obstructed by the grantor, he is liable to an action therefor, and cannot defend by showing another way or mode of enjoyment in a different line or direction, although it may be equally convenient with the right or privilege originally granted."

The rule has its application to farm crossings over or under railroads.

The conditions which existed at the time the railroad was originally built in 1878 have in no way changed. The same necessities for a crossing exist. The contour of the land is the same. The uses to which the farm has been and is devoted are the same. All the reasons for a crossing of the character and size of that constructed in 1878 obtain to-day.

The defendant relies greatly on the case of People ex rel. Frost v. N. Y. Central & Hudson River R. R. Co., 168 N. Y. 187, 61 N. E. 172, as an authority justifying its right to abolish and close up the undercrossing constructed in 1878. In that case the Hudson River Railroad was organized, and constructed its railroad under a special act providing:

"In all cases where such railroad shall intersect the lands of any individual, or pass between such lands and the usual place of access to the river, and cannot be conveniently crossed by reason of high embankments, deep cuts or otherwise, the said corporation shall, at their own expense, construct and sustain convenient passes or roads across or under the railroad for the passage of persons, cattle, carriages or teams, for the purpose of farming or managing such lands and giving to them their usual access to the river."

This railroad was constructed in 1846. The proceeding in that case was commenced in 1901. In recognition of the necessity for providing the means of access to the river front the company, at the time of constructing this embankment pierced it·by six culverts; the openings in them varying in width from 21 to 30 feet. The brick manufactured on the premises at the point involved in this case were shipped to market on vessels loaded at wharves on the river front at the point in question. A mandamus proceeding was brought by the plaintiff, and a peremptory mandamus granted requiring the defendant to restore all the six culverts to their former condition; some of them having been filled up by the railroad company. Two of these culverts or undercrossings were left in substantially the same condition as they had been since the road was constructed. No alternative writ of mandamus was granted, and the sole question presented upon the appeal was whether an issue was tendered by the defendant which rendered the granting of the peremptory writ of mandamus improper, and made it necessary to have an alternative writ. No alternative writ having been granted, the facts stated in the affidavits of the defendant had to be taken as true for the purposes of the motion; and the defendant's affidavits showed that the premises had not been used for the manufacture of brick, nor a brickyard operated thereon, since the year 1896, with the exception that during the year 1899 two experimental burnings of enameled brick were made on the premises, that the experiments were not successful, that since that date all the buildings on the premises used for the manufacture of brick had been removed, except a two-story brick building erected for a power house by the Croton Brick Company, and then occupied by a tenant who used the same for the purpose of grinding emery, and that the furnace on the ·premises was then in ruins, which was used by the company engaged in the experiments aforesaid, for the maufacture of enameled brick.

The defendant's paper further disclosed that the trestlework used by the brick company, upon which cars were moved from the river through the culvert to the premises in question, was in ruins; that the only one of the culverts mentioned in the moving papers used by the then occupant of the premises was culvert No. 4, which had not been filled up; that it was impracticable, because of the location of the work employed in the grinding of the emery, to use any other of the said culverts; that said culvert No. 4, at that time, was about 26 feet in width; that the pier and bulkheads on the westerly side of the defendant's railroad opposite the premises in question were in such a state of ruin that they were impractical for the loading and unloading of vessels; that the only clay bank upon the premises from which the material must be taken in order to manufacture brick thereon was at that time about 1,500 feet east of the railroad tracks; that all kilns

and dryyards necessary for the manufacture of brick upon the premises would be erected at such a distance easterly from the railroad that all tracks necessary for the conveyance of fuel from the dock, and burned brick to the dock, would be laid in converging lines to one culvert under the railroad tracks; and that not more than one culvert would be necessary for the proper operation and management of any brickyards located upon the premises. The defendant's papers also showed that no excavation had been made upon the premises during eight years preceding the time of the application.

Under this showing of the defendant's affidavits, which had to be taken as true, the court held that an alternative writ should have issued. But it will be seen that the facts alleged on the part of the defendant showed not only that, on account of the changed condition of the plaintiff's property, the necessity for more than one undercrossing had ceased to exist, but showed also a substantial abandonment by the plaintiff of the use of these rights of ways through these undercrossings, excepting the one through No. 4. In that case the extra culverts or undercrossings were treated similar to the case of a right of way by necessity, which ceases when the necessity ceases.

But, as already stated, the conditions in the case at bar have not changed or been modified in any way from the time the railroad was built, which differentiates this from the Frost Case.

The fact that at the present time concrete culverts and bridges are being substituted for wooden structures, owing to the inherent dangers of such structures being destroyed by fire, does not obviate or change the conditions as to the necessity or wisdom of a suitable way of access to that portion of the farm lying east of the railroad from that on the west.

Defendant's counsel cites, in support of his contention of the right to close up the undercrossing in question, the case of Reeves v. N. Y. Central & Hudson River R. R. Co., decided by Mr. Justice Dunwell at the Wayne Special Term in 1905, and which decision was affirmed by the Appellate Division of the Fourth Department (114 App. Div. 907, 100 N. Y. Supp. 1139), without opinion, and again affirmed by the Court of Appeals, without opinion (192 N. Y. 560, 85 N. E. 1115). In that case, the railroad company filled up an underground cattle pass, which had been constructed to provide a passage to a 14-acre lot on the side opposite a 35-acre tract. The farm, for several years, had ceased to be used largely for grazing, and the tenant had no cattle. Crossing over the tracks of the railroad, except for cattle, had always been at grade. The action was brought by the owner to compel the railroad company to remove the filling or obstructions, and restore the cattle pass to its former condition. Mr. Justice Dunwell, deciding the case, said:

"It seems to me that the underground crossing, although not indispensable, is nevertheless necessary to plaintiff for the complete and proper use and management of his farm. At present the farm is not so largely supplied with cattle and other grazing animals as formerly, but plaintiff's farm should not be deprived of a necessary facility to their future maintenance thereon whenever the proprietor may see fit to resume their growth, maintenance, or employment thereon. A temporary suspension of cattle raising or the employment of farm animals as one of the pursuits of agriculture ought not to have

the effect of closing up the avenue of access to the portion of the farm usually devoted to that pursuit which the proprietor may be desirous of resuming on a larger scale at any time. Formerly more considerable numbers of farm animals were used upon this farm, and it does not appear that the present absence of them is more than temporary. The power to have them upon lands adapted to their maintenance ought not to be destroyed or curtailed by depriving the farm of the necessary facilities for their maintenance and use. The closing of the underground pass practically prevents the use of the lands north of the railroad for the purposes of pasturage, particularly for young animals. A grade crossing is a too precarious substitute. But in view of the great cost of the underground pass so disproportionate in amount to the value of the lands north of the tracks to be reached thereby, it is deemed more consonant with justice and the equitable rights of the parties that damages be substituted as a compensation instead of a judgment for a restoration of the pass.

"It is, accordingly, directed that findings and a decree be prepared directing a restoration of the pass, or at the option of the defendant that it pay plaintiff $600, his damages for the loss thereof and in lieu thereof, on payment of which defendant shall not be liable for any other than a grade crossing for said farm in the future; such acceptance of payment by plaintiff to be equivalent to a covenant running with the land to that effect."

It seems to us that the decision quoted fully sustains the plaintiff's, rather than the defendant's, contentions in this case. Here the threatened closing of the undercrossing has not been carried out. The statu quo has been preserved. The railroad company should not be permitted to close the undercrossing without compensating the owner, as was required in the Reeves Case.

The cost of a concrete undercrossing would probably exceed and be disproportionate to any damage caused by abolishing the undercrossing and substituting one at grade, and we do not mean to say that upon making proper compensation the defendant might not acquire the right to close the undercrossing. This damage may, perhaps, be ascertained in a condemnation proceeding brought to acquire the right to close. This court, however, has no data before it to determine the amount of such damages, and can make no provision or direction in that regard.

We are, however, of the opinion that the defendant has no right to close the undercrossing without first making proper compensation. The defendant is a public service corporation. It may be deemed expedient in the future, in changing the grade of its roadbed, to cut down its embankment, and in that event sufficient clearance in height be left to enable teams to pass under the opening left. We do not mean to say that the railroad company could not carry out such improvement; nevertheless, until that has been done, or until proper compensation has been made to the owner of the farm, we think the plaintiffs have the right to have the undercrossing maintained.

We, therefore, direct judgment for the plaintiffs for the relief asked for in the complaint, without prejudice, however, to the right of the defendant in the future, if it so elect, to institute proper proceedings to obtain the right to close said underclosing upon properly compensating the owners for the damages sustained thereby.

Judgment directed accordingly, with costs of this action.